**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KRISSIE PURSLEY,                                      Case No. 1:18-cv-256

        Plaintiff,                                      Black, J.
                                                      Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Krissie Pursley filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff asserts three claims of error. As explained below, I conclude that the ALJ's decision should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

Plaintiff has twice sought social security benefits. Plaintiff first filed applications for disability insurance benefits ("DIB") and for supplemental security income ("SSI") in July 2010, alleging the onset of disability beginning on June 1, 2010. Plaintiff's first claims were denied both initially and upon reconsideration, as well as in a subsequent decision by Administrative Law Judge ("ALJ") George Gaffaney on May 12, 2012. (Tr. 95-100). In his decision, ALJ Gaffaney determined that Plaintiff had only one "severe" impairment, degenerative disc disease of the cervical spine, plus two non-severe impairments of a

1

thyroid condition and allergies. (Tr. 97). Plaintiff did not appeal or seek further judicial review of ALJ Gaffaney's adverse decision.

In November 2013, Plaintiff filed new DIB and SSI applications based upon allegations of neck problems, arthritis in her neck and hands, a possible goiter, and depression. (Tr. 105). Plaintiff initially again alleged a disability onset date in June 2010, using the date of June 30 rather than June 1 as she had previously. (*Id.*) Plaintiff's 2013 applications also were denied initially and upon reconsideration, following which she sought an evidentiary hearing. On March 22, 2016, Plaintiff appeared with counsel, and gave testimony before ALJ Lawrence E. Blatnik; a vocational expert also testified.

Plaintiff was 40 years old on her alleged disability onset date, and was within the same age category, at 46 years old, on the date of ALJ's May 25, 2016 decision. (Tr. 6). She has a limited education, having left school after the eighth grade in order to work. (Tr. 59). She is divorced, and testified she lives with her father, who is retired. (Tr. 58). Plaintiff testified that she became disabled after a work accident that occurred when she was lifting dishes in a restaurant. (Tr. 71-72).

On May 25, 2016, ALJ Blatnik issued a second adverse written decision. (Tr. 13-25). The ALJ determined that Plaintiff has severe impairments of: "degenerative disc disease of the cervical and lumbar spine; headaches; and depressive and anxiety disorders." (Tr. 15). The Appeals Council found the same impairments in a subsequent decision.[1] (Tr. 6). Plaintiff does not dispute the determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20

---

[1] As explained below, despite Plaintiff's extensive argument concerning the ALJ's decision, this Court considers the later decision of the Appeals Council to be the final decision of the Commissioner.

C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.

Both the ALJ and the Appeals Council determined that Plaintiff cannot perform her past relevant work as a dishwasher, stock clerk, or cashier, but nevertheless found that she retains the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to the following limitations:

> She can lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently; she can sit for six hours, and stand and walk for two hours, in an eight-hour workday; but she requires an option to change positions from sitting to standing, and standing or walking to sitting every 20 to 30 minutes for three to five minutes at a time. She can frequently handle and finger with either hand; occasionally climb ladders and scaffolds; must avoid all exposure to unprotected heights or moving mechanical parts; and can occasionally twist or turn her neck. She can perform simple, routine and repetitive tasks.

(Tr. 20; *see also* Tr. 6). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of assembler, sorter /packer of small products, and information clerk. (Tr. 24). Therefore, the ALJ determined that Plaintiff was not under a disability.

On November 1, 2017, the Appeals Council granted Plaintiff's request for further review based upon a clear error made by the ALJ in this case concerning his failure to review or discuss the opinion of a treating physician. Rather than remanding so that the ALJ could correct that error, the Appeals Council proposed to issue a new decision concluding that Plaintiff was not disabled. (Tr. 4). After allowing Plaintiff time to submit an additional statement or evidence, and receiving none, the Appeals Council issued a final adverse decision on March 5, 2018. (Tr. 1-7).

As stated, the Appeals Council found error in the ALJ's failure to address the medical opinion of a treating physician, Sabir Quraishi, M.D. (Tr. 5). Because the medical criteria for evaluating the severity of mental disorders had been revised while Plaintiff's appeal remained pending, the Appeals Council also issued new findings on the severity of her depressive and anxiety disorders. (Tr. 6). However, even considering Dr. Quraishi's opinion and the newly-revised criteria for evaluating mental disorders, the Appeals Council largely adopted and restated the ALJ's findings. (*Id.*) Thus, the Appeals Council concluded that Plaintiff was not under a disability through May 25, 2016, the date of the ALJ's decision.

Despite the fact that the Appeals Council and not the ALJ issued the final decision of the Commissioner in this case, Plaintiff's Statement of Errors focuses exclusively on the *ALJ*'s decision. Plaintiff seeks remand based on the following three errors: (1) the ALJ's failure to give controlling weight to the opinion of Dr. Quraishi; (2) the ALJ's failure to employ a medical expert; (3) the ALJ's failure to include additional limitations in his hypothetical question to the vocational expert. In her reply memorandum, Plaintiff attempts to reframe the same errors in the context of the Appeal Council's decision. For the following reasons, the undersigned finds no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

5

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims of Error

### 1. Plaintiff's Treating Physician, Sabir Quraishi, M.D.

Plaintiff's first claim of error seeks remand on grounds that the ALJ erred in failing to give controlling weight to the opinions of her treating primary care physician. The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. § 404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). The treating physician rule[2] requires "the ALJ to generally give greater deference to the opinions

---

[2] Effective March 27, 2017, a new rule set forth in 20 C.F.R. § 404.1520c entirely replaces the treating physician rule. However, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Based on the date that Plaintiff filed her claim, the "treating physician rule" and related case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009).

The reasoning behind the rule has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting former 20 C.F.R. § 404.1527(d)(2)). Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. § 404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the

Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

In late February or March 2013,[3] Dr. Quraishi completed a check-box style, one-page "Social Security Functional Capacity" form on which he stated that Plaintiff was "unable to work due to declining health issues," and that her restrictions were permanent. (Tr. 394). Dr. Quraishi further opines on that form that Plaintiff can sit, stand, and walk for no more than one-hour <u>total</u> in a single eight-hour day, that she can lift or carry no more than five pounds occasionally, and has no ability at all to perform "simple grasping" or "pushing and pulling arm controls" or "fine manipulation" with her hands, arms or fingers. (*Id.*) He states that Plaintiff has no ability to use leg controls with either of her legs. (*Id.*) He provides no diagnoses or other explanation for such extreme limitations, other than a conclusory reference to "neck pain and pain with movement of neck." (*Id.*)[4] All of the referenced limitations would have been work preclusive.

As conclusory as they were, the regulations still required the ALJ to discuss Dr. Quraishi's opinions. Plaintiff argues that remand is required based upon the ALJ's failure to do so, and because Dr. Villanueva, the consulting physician whose opinions were credited in lieu of Dr. Quraishi's opinions, did not have access to a complete record. (Doc. 9 at 9).

---

[3] The form is dated "03/27/13" in one area, and "02/27/13" in another. (Tr. 394).
[4] Dr. Quraishi later completed a second form stating that he had seen Plaintiff regularly between May 31, 2011 and January 25, 2014, and had diagnosed a cervical strain, acute neck injury, GERD, and goiter. Aside from the brief reference to diagnoses and dates of treatment, this later form provides no information and instead directs the reader to "see office notes." (Tr. 423).

If this judicial appeal were limited to review of the *ALJ*'s decision, Plaintiff *might* be entitled to remand.[5] However, it is the decision of the Appeals Council, and not that of the ALJ, that represents the final decision of the Commissioner in this case. *See Mullin v. Bowen*, 800 F.2d 535,541 (6th Cir. 1986) (explaining that when the Appeals Council accepts review and alters the ALJ's decision, it is the Appeals Council's decision that is subject to judicial review under the substantial evidence standard); *Taylor v. Sec'y of HHS*, 1989 WL 153548 at *2 (6th Cir. 1989) (same). On the record presented, the Appeals Council accepted review precisely because of the ALJ's error in failing to discuss Dr. Quraishi's opinions. The Appeals Council then corrected that error.

> In the decision, the [ALJ] indicates that "no physician has imposed a specific work preclusive limitation on the claimant's functioning, or opined that she was entirely disabled."…Contrary to this statement, there is a medical opinion dated March 27, 2013, from Sabir Quraishi, M.D., a primary care physician, that indicates the claimant is unable to work, and provides extreme, physical limitations…. However, the medical evidence of record, including Dr. Quraishi's own treatment records, does not support this opinion. Rather, the residual functional capacity assessed by the [ALJ] is supported by substantial evidence. Diagnostic test results, including magnetic resonance imaging and electromyographic analysis, show mostly mild findings. Physical and mental exam findings have been within normal limits, except for range of motion restriction and spasms in the neck, slightly reduced strength, and a mildly depressed and anxious mood and affect. Treatment has been conservative with medication and therapy…. Therefore, the Appeals Council assigns little weight to the opinion of Dr. Quraishi.

(Tr. 5).

In short, the Appeals Council explained that Dr. Quraishi's opinions were not entitled to controlling weight, despite his status as a treating physician, because his RFC opinions were not well-supported by medically acceptable clinical and laboratory

---

[5] Frankly, Dr. Quraishi's opinions arguably fall into the rare class of cases where remand might not have been required despite the clear error, because the opinions are "so patently deficient that the Commissioner could not possibly credit" them. *Blakley*, 581 F.3d at 409.

diagnostic techniques.  Not only were such extreme RFC limitations not well-supported, but they were contradicted by Dr. Quraishi's very own treatment notes, as well as by other substantial evidence in the record.

Plaintiff's argument that Dr. Quraishi's opinions were consistent with Plaintiff's own self-serving testimony is not persuasive, as the ALJ and the Appeals Council both discounted Plaintiff's subjective complaints as inconsistent with and unsupported by her medical records.  (*See, e.g.* Tr. 22; Tr. 6).  In addition, the ALJ noted that in her Functional Report, Plaintiff reported a variety of activities including performing household chores, feeding her pets (3 cats and a dog), baking and driving, which includes driving her father "if he needs to go somewhere."  (Tr. 22, citing Tr. 323-30 and Tr. 324).  Plaintiff's additional hypothesis that Dr. Quraishi's March 2013 opinions "presumably" were based on an MRI dated in August 2013, five months *after* his RFC opinions were offered, makes no sense.

In her reply, Plaintiff attempts to asserts new claims tied to the decision of the *Appeals Council.*  Ordinarily, this Court will not consider entirely new claims or arguments presented in a reply memorandum.  *See Stiltner v. Com'r of Soc. Sec.*, 244 Fed. Appx. 685, 686 (6th Cir. 2007) (holding that plaintiff waived argument by not including it in her brief).  However, even if considered, the undersigned finds no error in the evaluation of Dr. Quraishi's opinions by the Appeals Council.   The Appeals Council reasoned that Dr. Quraishi's treatment notes reflected mostly normal findings and that diagnostic testing similarly found only mild findings.  Dr. Quraishi's opinions were also inconsistent with Plaintiff's conservative treatment.  (Tr. 5).  For the reasons stated, the Appeals Council's rejection of the extreme and conclusory opinions of Dr. Quraishi is well-supported.

Nor does the undersigned find reversible error in the ALJ's initial conclusion that the opinions of Dr. Villanueva were entitled to "great weight" in the formulation of Plaintiff's RFC. (Tr. 22). Dr. Villanueva was a non-examining agency consultant who reviewed Plaintiff's records on July 23, 2014, and concluded that the same RFC limitations previously determined by the ALJ in the May 12, 2012 denial of Plaintiff's first application were controlling under *Drummond v. Com'r*, 126 F.3d 837 (6th Cir. 1997), despite the fact that some more recent evidence showed "that your conditions may have worsened." (Tr. 146). Contrary to Dr. Villanueva's view, ALJ Blatnik determined that new and material medical evidence required additional and more restrictive RFC findings. Nevertheless, consistent with Dr. Villanueva's opinion, the ALJ concluded that Plaintiff could still perform some sedentary work. (Tr. 146).

Again, it is the decision of the Appeals Council that is controlling, and not that of the ALJ. Therefore, the weight placed by the ALJ on Dr. Villanueva's opinions is of questionable relevance.[6] In contrast to the ALJ, the Appeals Council adopted the same RFC findings based upon the Council's review of the "entire record." It is also worth noting that the RFC findings of both the ALJ and of the Appeals Council distinguished *Drummond* based upon additional and more recent records, and therefore assessed greater functional limitations than assessed by Dr. Villanueva.

---

[6] To the extent that Plaintiff is complaining that the date of Dr. Villanueva's review precluded his access to her more recent records, she misperceives the import of *Blakley*. "There will always be a gap between the time the agency experts review the record and give their opinion[s] with respect to the Listing and the time the hearing decision is issued." *Kelly v. Com'r*, 314 Fed. Appx. 827, 831 (6th Cir. 2009). In *Blakley*, the Sixth Circuit confirmed that an ALJ may give the most weight to the opinion of an agency consultant who has not accessed a complete record – so long as the ALJ provides good reasons and acknowledges the later records. *Id.*, 581 F.3d at 409. Here, the ALJ did both, discussing why Dr. Villanueva's opinions were consistent with the record as a whole, and further discussing multiple records "received subsequent to the DDS adjudication." (Tr. 22; *see also* Tr. 21, discussing specific treatment records including neurology treatment records provided post-hearing).

In her reply brief, Plaintiff attempts to raise a new issue, arguing that the Appeals Council did not adequately consider new medical evidence submitted *after* the ALJ's decision, specifically 3 pages of records "uploaded from her treating neurologist," Dr. Kanabar. (Doc. 16 at 1). However, the Appeals Council explicitly acknowledged the additional records, including August 2, 2016 records from Dr. Kanabar, records dated August 10- August 19, 2016 from Dr. Quraishi, and a third record dated September 27, 2016 from the Adams County Medical Center. The Appeals Council explained that none of those records were relevant to "the period at issue" because they post-dated May 25, 2016, the date of the ALJ's decision. The Appeals Council further explained that it was deciding disability only through that date, but that the referenced records could be used "to file another application" for a later time period.[7] (Tr. 2).

## 2. Failure to Employ a Medical Expert

In her second assignment of error, Plaintiff complains that the ALJ erred by failing to grant her request for a medical expert at the hearing. In her written request for an evidentiary hearing, Plaintiff stated that she believed that her limitations were functionally equivalent to Listing 1.02, and that for that reason,[8] a "medical expert for [the hearing] is requested." (Tr. 189). At the outset of the hearing, counsel reiterated that "we had requested a medical expert with our request for a hearing," based upon the submission of new medical evidence "after the last State Agency review." (Tr. 89). Plaintiff cites to a summary of diagnoses listed by Dr. Quraishi in a clinical note dated October 14, 2016

---

[7] Plaintiff was 48 years old at the time of the Appeals Council's decision. Under Grid Rule 201, a restriction to sedentary work for an individual approaching advanced age (age 50-54) would result in a presumption of disability, regardless of whether the referenced records would support a more restrictive RFC.

[8] It is a plaintiff's burden to prove that she satisfies all elements of a listed impairment. *See Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). Plaintiff did not attempt to make that showing at the hearing, and does not argue in this appeal that she meets or equals Listing 1.02.

as evidence that the record required further development or review by a medical expert. (Tr. 714). However, a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by an impairment. *See, e.g., Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990). Plaintiff fails to point to other records or to explain in what way any of the listed diagnoses could have supported more restrictive RFC findings, other than Dr. Quraishi's conclusory one-page RFC form.

Plaintiff concedes that the regulations do not require consultative examinations at the Agency's expense, nor do they require an ALJ to employ a consultative medical expert at the hearing.[9] However, she argues that the ALJ's decision not to employ a medical expert here reflects an abuse of discretion. Apparently based on the fact that the first ALJ found only one severe impairment (degenerative disc disease), Plaintiff hypothesizes that in order to have new "severe" impairments of depression and anxiety disorder along with lumbar degenerative disc disease, the ALJ and/or the Appeals Council must have "played doctor."

The undersigned disagrees. At step 2 of the sequential analysis, the ALJ (or in this case, the Appeals Council) is responsible for determining whether a particular diagnosis or medical condition represents a "severe" impairment as defined under the regulations. 20 C.F.R. §404.1520(4)(ii). The ALJ here did not come up with a list of impairments out of thin air, but instead relied upon the record, as did the Appeals Council. In concluding that Plaintiff suffered from severe mental impairments (to which Plaintiff

---

[9] Plaintiff refers to the lack of a more recent physical consultative examination and the lack of a medical expert at the hearing as if they were the same. They are not. In any event, for the reasons stated, the undersigned finds no abuse of discretion in the failure to refer Plaintiff for an additional physical or mental consultative examination, or in the failure of the ALJ to employ a non-examining consultative medical expert at the hearing.

herself had testified), the ALJ referenced a consultative psychological examination in which the examiner had diagnosed Plaintiff with mild depressive and anxiety-related disorders, as well as mental health records from the Shawnee Mental Health Center and from Dr. Quraishi.  (Tr. 17-18).  In fact, multiple records support the findings that she suffered from "severe" impairments of anxiety and depression.  So too does the medical record support the findings of severe degenerative disc disease of both her cervical and lumbar spine.[10]  Plaintiff's concern with the Commissioner's inclusion of additional "severe" impairments is both unfounded and puzzling, insofar as the findings of additional severe impairments benefited the Plaintiff and resulted in additional functional limitations than previously determined in the 2012 decision.

To be fair, however, it appears that Plaintiff's primary concern is less with the findings of additional severe impairments than with the RFC findings on which the more recent adverse decision was based.  Plaintiff maintains that an ALJ "is not qualified to interpret raw medical data in functional terms and make determinations regarding a claimant's medical condition."  *Deskin v. Com'r of Soc. Sec*., 60 F. Supp.2d 908, 912 (N.D. Ohio 2008).  Plaintiff argues that this case should be remanded under sentence four with directions either to refer Plaintiff for a "current consultative examination" or to have a psychological medical expert testify at a new hearing about her psychological conditions, along with an additional "physical expert" to "interpret the MRI results and the

---

[10] As the Commissioner notes, although Plaintiff was not formally diagnosed with lumbar degenerative disc disease (as opposed to cervical disc disease), an MRI of her lumbar spine revealed mild abnormalities. (Tr. 522).  Thus, the ALJ appears to have given Plaintiff the benefit of the doubt in his finding of "severe" lumbar impairment.  (Tr. 15, 18).

majority of the medical exhibits" that were filed after Dr. Villanueva's July 2014 review. (Doc. 16 at 3). With all due respect to the magistrate judge who authored the oft-quoted *Deskin*, other courts within the Sixth Circuit and the Sixth Circuit itself have expressed a much more nuanced, if not contrary view.[11] Although exceptional cases exist when it may constitute an abuse of discretion not to solicit additional medical opinion evidence to support a particular RFC finding, an ALJ's choice not to solicit additional medical opinion evidence is properly upheld in the vast majority of cases.

Plaintiff seems to suggest that RFC findings can only be upheld if each and every medical record has been reviewed by a consulting physician, who then "interprets" and distills the record into RFC findings that may be adopted by the ALJ. However, neither the regulatory scheme nor case law support that faulty premise. Rarely (if ever) will there be medical opinion evidence to sum up the import of each medical record. In many cases, the sole medical opinion evidence will be that generated by agency physicians who conduct their review either on initial consideration or on reconsideration, long before the record is complete. The undersigned does not dispute that in some cases, "raw data" cannot realistically be interpreted without the assistance of a consulting physician or medical expert. However, many medical records do not contain complex "raw data" and may accurately be evaluated in assessing residual functional capacity by an ALJ without "playing doctor."

Taken out of context, *Deskin*'s language is overbroad and cannot be reconciled with the regulatory scheme. That regulatory scheme both anticipates and embraces the determination of RFC limitations by the ALJ based on the record as a whole, regardless

_____

[11] *Deskin* itself relied on cases from other circuits.

of the number or timing of medical opinions offered into evidence.  In fact, the ALJ <u>alone</u> is legally responsible for determining what limitations to include in an individual's residual functional capacity.  *See* 20 C.F.R. § 404.1546(c).  Other cases cited by Plaintiff are easily distinguishable or are from other circuits.  *See Smiley v. Com'r of Soc. Sec.*, 940 F. Supp.2d 592 (S.D. Ohio 2013) (remanding because the ALJ's finding that plaintiff could work at the "medium" exertional level was contrary to <u>all</u> medical opinions, including those of four treating and examining physicians, and was contradicted by physical therapy treatment records).

Contrary to Plaintiff's argument, an ALJ is not required to base each RFC limitation on a specific medical opinion, so long as the RFC is supported by the record as a whole. *See Coldiron v. Com'r*, 391 Fed. Appx. 435, 439 (6th Cir. 2010); *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."); *accord Clemow v. Com'r*, 2018 WL 1083494 at *8 (S.D. Ohio Feb. 28, 2018); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  So long as the hypothetical RFC formulated by the ALJ is supported by the record, a vocational expert's testimony that an individual can engage in a substantial number of jobs will constitute substantial evidence to support the non-disability determination.  *Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

### 3.  The Hypothetical Question and the Credibility Determination are Supported by Substantial Evidence

Plaintiff's final assertion of error argues that the ALJ failed to consider her "failure to thrive" more holistically in assessing her functional limitations and formulating the

hypothetical question to the vocational expert.[12] *See generally, Gentry v. Com'r of Soc. Sec.*, 742 F.3d 708, 726 (6th Cir. 2014) (reversing and remanding based on failure to consider combined effect of impairments). However, an ALJ is not required to include restrictions in the RFC that the ALJ did not accept. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff attaches to her Statement of Errors an abstract of a September 14, 2018 scholarly article on the "'Failure to Thrive' in Older Adults." (Doc. 9-1). She now argues that a "failure to thrive" was "precisely what [she] was complaining of." (Doc. 9 at 13). Plaintiff's reliance on evidence not before the ALJ and not considered by the Appeals Council is misplaced. In reviewing whether a decision is supported by substantial evidence under sentence four, this Court may not consider new evidence that was not before the Commissioner. *See Cline v. Com'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).

In any event, Plaintiff does not explain what limitations, if any, that the hypothetical question or RFC failed to include relating to a "failure to thrive." Nor does she advocate for any specific limitation that she believes the ALJ ought to have considered but failed to include. Instead, she argues more generally that the hypothetical question failed to include additional work-preclusive limitations based upon her subjective reports about the intensity and persistence of her pain and other symptoms. Essentially, then, Plaintiff's third claim of error finds fault with what traditionally has been described as the "credibility" determination.[13] *See generally* Doc. 9 at 14-15, citing case law on credibility and arguing

---

[12] It is unclear from Plaintiff's argument whether any physician has diagnosed Plaintiff with "failure to thrive," as she points to no specific medical record containing that phrase or diagnosis.

[13] The assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to

that the ALJ failed to adequately consider "the magnitude of her symptomatology, dysfunction and pain").

It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). Therefore, a reversal of the Commissioner's decision based upon alleged error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). It is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

On the record presented, ALJ Blatnik concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21).[14]

---

which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). Despite the linguistic awkwardness, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018).

[14] ALJ Gaffaney made a similar assessment four years earlier. (See Tr. 98, "treatment notes in the record do not sustain the claimant's allegations of disabling pain).

Although the focus of this Court is on the Appeals Council decision, that body fully relied upon and adopted the ALJ's determination. "The Appeals Council considered the claimant's statements concerning the alleged symptoms and adopts the Administrative Law Judge's conclusions in that regard." (Tr. 5; *see also* Tr. 6, finding Plaintiff's "alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this and the hearing decision.").

The ALJ provided support for his adverse determination throughout his opinion, noting, for example, that Plaintiff agreed that her mental impairment did not require a referral to a psychiatrist, but that she continued mental health services "because her attorney told her to do so." (Tr. 17-18). In 2015, the ALJ noted that Plaintiff reported "feeling stressed over the fact her local family services agency was asking for documentation of her claims she was unable to work." (Tr. 18). And in June 2015, an examining physician "noted that the claimant was dramatic in manner, and was over-reactive in perceptions." (Tr. 18, citing Tr. 530). With respect to Plaintiff's allegedly disabling physical complaints, the ALJ noted:

> [T]he results of …MRI, EMG, EKG, Doppler, ultrasound, radiographic, and clinical evaluations, …do not reveal completely debilitating pathology. Spinal imaging studies were negative for frank herniation, cord or nerve root amputation, advanced stenosis, or significant degenerative or erosive changes. During the period at issue, the claimant underwent no surgical intervention, physical therapy, injection or work hardening modalities for a spinal or other physical malady. EMG investigation reflected no radial tunnel, neuropathic changes or underlying radicular process. Brain imaging was negative for demyelinating disease, bleed, hemorrhagic etiology, or acute intracranial defect.
>
> The evidence, including neurology treatment records provided post-hearing, fails to establish that the claimant's headache symptoms occur with sufficient frequency or intensity to result in work-preclusive limitations…. Clinicians observed the claimant ambulate normally without an assistive device and to retain functional range of motion. The claimant's neurological status in terms of cranial nerves, motor power, reflex activity, cerebellar and sensory functions were largely intact, and her musculoskeletal and

extremity reviews were commonly free of deformity, clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes.

(Tr. 21).

The ALJ expressly considered the "magnitude of her symptomatology and dysfunction, including her expressed level of pain and reported need to take breaks and to recline and rest for portions of many days" but found those complaints "not fully consistent with the record evidence. (Tr. 22). In addition, Plaintiff's reports of numbness and tingling were at odds with clinical examination records that reflected consistently intact sensory functions. (Tr. 22; *contrast* Tr. 331, subjective report that her "left side is numb 90% of the time" and "right side 60% of the time."). In yet another inconsistency, Plaintiff's report of significant medication side effects was not supported by the record. (Tr. 22).

Before the ALJ and this Court, Plaintiff insists that she has suffered from mini-strokes. However, the ALJ expressly considered the sole record referenced by Plaintiff, an MRI dated July 11, 2014. The report notes Plaintiff's self-reported "history of prior stroke" but reflects no objective diagnosis. Instead, the objective portion of the report notes "several small scattered white matter lesions, which are nonspecific" and unchanged since a prior study, and that do not suggest either demyelination or multiple sclerosis. (Tr. 474). Substantial evidence therefore supports the ALJ's statement that Plaintiff's subjective report of strokes was not borne out by the objective record. (Tr. 22; *see also* Tr. 17). Plaintiff refers this Court to no other records documenting a history of stroke. More importantly, she does not refer to any record(s) that reflect any functional limitations caused by a "post-stroke" type of impairment.

Both the ALJ and the Appeals Council also considered Plaintiff's mental impairments in evaluating her subjective complaints. The ALJ wrote:

> [T]he overall evidence does not suggest or establish that the claimant lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple and routine in nature…. The claimant was not psychiatrically hospitalized, and she reportedly obtained some benefit from counseling and prescribed agents. Within testimony or the written record, it was reported that the claimant performed certain self-care tasks (she reportedly has some difficulty tying shoes, putting on and removing shirts), prepared meals, enjoyed baking, completed light household chores, laundered clothing, dusted, did limited gardening, drove an automobile, shopped, paid bills, watched television, listened to the radio, read, fed pets, and spent time with and assisted her father….

(Tr. 22; *see also* Tr. 324-325).

The ALJ expressly considered a record that assessed Plaintiff's Global Assessment of Functioning score ("GAF score") at 50, explaining why he believed that particular record did not reflect Plaintiff's overall level of functioning over time. (*Id.* at 22-23, citing Tr. 525). The ALJ's analysis on that issue is both substantially supported and consistent with regulatory and Sixth Circuit authority. *See Lee v. Com'r of Soc. Sec.*, 529 Fed. Appx. 706, 716 (6th Cir. 2013) (noting that regulatory guidelines clarify that GAF scores "have no direct correlation to the severity requirements of the mental disorders listings.") (internal quotation and citation omitted).

Considering the new criteria for the evaluation of mental disorders that took effect after the ALJ's original decision, the Appeals Council wrote:

> [Plaintiff's] records note mental exam findings within normal limits, except for a mildly depressed and anxious mood and affect. The claimant appears to function in the low average range of intelligence, with normal cognitive functioning. Further, the records show multiple recurrent activities of instrumental and executive functioning, including the claimant taking care of her father and pets, tending to personal needs without reminders, preparing meals, performing household chores, shopping, driving, handling money and finances, watching TV, reading, crocheting, gardening, getting along and interacting with others, going out, following instructions, paying attention, competing tasks, and handling stress and changes in routine.

21

(Tr. 5-6).

Plaintiff complains that the ALJ overly relied upon statements made in her psychological consultative evaluation without including sufficient limitations based on her reported pain and fatigue. For example, the ALJ/Appeals Council failed to discuss one record in which Plaintiff reported that she needs help feeding her pets if she is having "a bad pain day." (Tr. 324). However, an ALJ need not accept all subjective reports at face value, and may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990). Here, the ALJ and Appeals Council did not rely solely on Plaintiff's daily activities but cited numerous inconsistencies in the record, including inconsistencies between Plaintiff's subjective complaints and the objective and clinical evidence of record and Plaintiff's conservative treatment history. Having examined the record as a whole, the undersigned finds that the Commissioner's evaluation of Plaintiff's subjective complaints to be amply supported by substantial evidence.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KRISSIE PURSLEY,                                    Case No. 1:18-cv-256

          Plaintiff,                        Black, J.
                                                    Bowman, M.J.
   v.


COMMISSIONER OF SOCIAL SECURITY,

          Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).